CASSVILLE ROLLER MILLING CO., Respondent, v. THE AETNA INSURANCE CO., Appellant.

Kansas City Court of Appeals, March 7, 1904.

1. INSURANCE: Principal and Agent: Corporations. *Held*, on the facts in this case that the agent of an insurance company, and the president of a milling corporation in issuing and taking out a policy on the mill bound their principals; that the policy was delivered and accepted and valid though the premium was not wholly paid; and the policy continued in force to the date of the loss notwithstanding an attempted cancellation by the insurance company without notice to the milling corporation.

2. ———: ———: ———: Loss: Claim. *Held*, after the loss no option the milling corporation could exercise could affect the validity or invalidity of its claim.

3. ———: ———: Return of Premium Paid: Compromise. After the loss the return of the part of the premium paid and its retention by the president of the milling corporation for a time did not operate as a compromise since such an agreement must be understandingly made.

4. ———: ———: Corporations: Loss: Power of President. After the loss the president of the milling corporation, though its general agent, had no power to give away the damages that accrued to the corporation.

5. ———: ———: ———: Tender: Deposit. The tender of a certificate of deposit if not objected to may be a valid tender, but the tender must be made to the party and a mere deposit in the bank in the name of the party is not a tender.

6. ———: ———: ———: Power of President: Return of Premium: Tender Back. After the loss on the policy the president of the milling corporation had no authority to receive back the premium paid for the insurance; and consequently there was no necessity for his tendering the return of same to the insurance company.

Appeal from Dade Circuit Court.—*Hon. H. C. Timmonds,* Judge.

AFFIRMED.

*Fyke Bros., Snider & Richardson* and *George & Landis* for appellant.

(1) Mr. Reynolds, general manager of and for the mill company, through whose hands all its business passed, and who looked after its insurance matters, as he did all other business transactions, was clothed with authority to legally represent it in the transactions out of which this suit grew, and his acts in those transactions, were the acts of the mill company, valid and binding upon it. Gentry v. Ins. Co., 15 Mo. App. 215; Breckenridge v. Ins. Co., 87 Mo. 62; Rice v. Groffman, 56 Mo. 434; McNichols v. Nelson, 45 Mo. App. 446; Nicholson v. Golden, 27 Mo. App. 132; Sharp v. Knox, 48 Mo. App. 169; Ruggles v. Washington Co., 3 Mo. 496; Nichols v. Kern, 32 Mo. App. 1; Bank v. Lumber Co., 54 Mo. App. 327; Silver v. Railway, 5 Mo. App. 381, 72 Mo. 194. (2) Even if the policy of insurance sued on had not, by the company's effort to cancel the same been deprived of all life, notwithstanding, the company in its

own person supposed and claimed it had been legally cancelled, then it stood, by reason of the defendants having failed to give the specified notice (if it was required in this instance), and its failure to refund such of the premium as had been paid, void or enforcible at plaintiff's option. Hopkins v. Ins. Co., 78 Iowa 344; Kerby v. Ins. Co., 13 Lea 340; McCullom v. Ins. Co., 61 Mo. App. 352. (3) The policy in suit being enforcible or void April 14, 1902 (the date of the loss), at plaintiff's option, its election in the matter determined the rights and obligations of both parties. Laundry v. Ins. Co., 151 Mo. 90; Bernard v. Ins. Co., 38 Mo. App. 106; Wilson v. Ins. Co., 5 N. E. 818; McCullom v. Ins. Co., 61 Mo. App. 352; Okey v. Ins. Co., 29 Mo. App. 105; LaForce v. Ins. Co., 43 Mo. App. 518; Horowitz v. Ins. Co., 40 Mo. 557; Frink v. Ins. Co., 66 Mo. App. 513. (4) Its acceptance of that part of the premium which had been paid, when returned by defendant's agent; understanding the policy had been cancelled, or that defendant claimed it had been cancelled, was an act contradicting and inconsistent with an intention to enforce the policy, and by it plaintiff became estopped from insisting that the contract be enforced. Laundry Co. v. Ins. Co., 151 Mo. 90; McCullom v. Ins. Co., 61 Mo. App. 352.

*Davis & Steele* and *E. P. Mann* for respondent.

(1) The position maintained by respondent in the trial court and the main ground upon which the court set aside the nonsuit is, that the policy being in full force and effect at the date of the fire, the policy could not have then been cancelled, the only thing they could legally do in this case at that time was a settlement of the loss or an adjustment thereof, which was not attempted. The effect of a cancellation is to relieve the insurer from any future liability on the policy, but it does not reach back and absolve the company from any

liability which it may have already incurred. If the subject-matter of the contract has already been destroyed by the cause insured against, at the time when the cancellation is effected, the insurer is not discharged from liability thereby. 16 Ency. of Law (2 Ed.), 876.. (2) A contract of insurance is a contract to pay liabilities and the cause of action is complete when the liability attaches. Locke v. Homer, 131' Mass. 93; Thompson v. Taylor, 30 Wis. 68; Trinity Church v. Higgins, 48 N. Y. 532; Maloney v. Nelson, 144 N. Y. 182. (3) It stands admitted by the record in this case that at the time of the fire the policy was valid and binding and the fire at once changed the obligation of the insurance company from a contingent to an actual liability, fixed and determined by the policy. The authorities are numerous that a debt can not be extinguished by the payment of a less amount even though both debtor and creditor may agree that the less amount shall be paid and received in full satisfaction of the debt. Gibbony v. Ins. Co., 48 Mo. App. 185; Riley v. Kershaw, 52 Mo. 224.; Dry Goods Co. v. Goss, 65 Mo. App. 55; Griffith v. Stonebreaker, 61 Mo. App. 1; Clark v. Ins. Co., 35 L. R. A. 276; 2 Wood on Insurance, sec. 443; Summers v. Ins. Co., 45 Mo. App. 53; Ehrlich v. Ins. Co., 88 Mo. 249; Okey v. Ins. Co., 29 Mo. App. 105; Lee v. Hassett, 39 Mo. App. 67; Marchildon v. O'Hara, 52 Mo. App. 523. (4) The Cassville Roller Mill Co., after the fire, respondent admits and appellant contends or asserts, was insolvent before the fire. Either contention being true, then Mr. Reynolds (the manager) would have no power or authority to release a debt of $1,500, due from appellant, for the mere pittance of $36; and the corporation or creditors could pursue and recover the remainder. The funds, assets and property of insolvent corporations are trust funds for benefit of creditors. Brick Co. v. Schoenrich, 65 Mo. App. 283; 1 Morawetz on Private Corpora-

tions, sec. 499; Webb & Co. v. Lumber Co., 68 Mo. App. 556; Gardner v. Ins. Co., 58 Mo. App. 611; McCartney v. Ins. Co., 45 Mo. App. 373; Rothschild v. Ins. Co., 74 Mo. 41; 16 Ency. Law (2 Ed.), 855.

ELLISON, J.—This action is based on a policy of fire insurance. At the close of the evidence, the trial court having intimated that a demurrer to plaintiff's case would be sustained, it took a nonsuit with a leave to set it aside. It did so move and the court sustained the motion, whereupon defendant appealed from the order.

Plaintiff is a corporation which owned and operated a flour mill. Its general manager was S. R. Reynolds who was likewise a director and stockholder. Defendant's agent at Cassville, where the mill was located, was C. D. Manley. Prior to February 19, 1902, plaintiff had been carrying a policy on the mill issued by defendant for $1,500. A few days prior to that date, Manley met Reynolds and reminded him that his policy would expire at that time and asked if he desired to renew it. Reynolds answered that he did, and Manley then said he would write it up. He did write it, and a few days after the 19th, Reynolds was in Manlay's office, after night, attending a meeting of the school board, when Manley said to him: "Here is that insurance policy written up for you," at the same time handing it to him, telling him it was a copy of the former one. Reynolds took it and "looked through it," and then said to Manley: "Charley, I don't want to take this to the mill; I will take it to the bank, I will stick it back here in a pigeonhole and take it down there; if I take it to the mill I will forget it." Manley said, "all right," and Reynolds said, "I just stuck it back." The premium was $75 and none of it was paid at this time, but shortly afterwards he met Manley on the street and paid him $20 and again, shortly after that, paid him $16.25. Reynolds never came back for the policy; and it seems that

on its issue being reported to the defendant company, it ordered it to be returned for cancellation and that Manley returned it to the company, whereupon the latter wrote across its face, "Cancelled and returned March 12, 1902." The policy, while giving the company power to cancel, required that the plaintiff should have five days' notice; and no notice was given, nor did Reynolds know that Manley had returned it. Four weeks thereafter, on April 12th, the mill burned at night. In the morning following, these men met in the postoffice and Manley said to Reynolds that his policy had been cancelled. The latter asked him why he had not informed him before, that he (Reynolds) had represented to the bank that he had $3,000 insurance and that this left him in a "peculiar condition." He then had Manley go with him to the bank and make it right there by explaining that Reynolds had not misrepresented matters to it, as he did not know of the cancellation. On the same day, but two or three hours later, Manley handed back to Reynolds the $36.25 premium money which had been paid him as already stated. Reynolds kept it a few days and then, on advice of one of the bank officers, he deposited it to Manley's credit and notified him of the deposit.

Plaintiff's reply admitted that the premium money was paid back to Reynolds, but that Reynolds did not know what it was for and that as soon as he found out he deposited it in bank for Manley. The reply also set up that Reynolds had no authority from plaintiff to accept the money. But in giving his testimony, which was the sole evidence in the case, aside from the documents, Reynolds stated that he did know what the money was for and that he kept it several days, and then only deposited it for Manley on advice of the bank.

From the foregoing facts there is no doubt that each of these agents represented and bound their principals up to the time of the loss as fully as if the actions recited had been performed by the principals themselves.

There is no doubt, considering the former dealings between the parties, that when Manley handed Reynolds the policy at the school board meeting in his office and Reynolds accepted it and then put it back in Manley's desk so that he might afterwards go by and take it to the bank, there was a full and completed contract of insurance between them, so that, if nothing intervened to change that relation and a loss occurred, the defendant would have been liable therefor; and the fact that the premium had not been paid at that time would not affect the liability.

There is no doubt that although the company had the policy returned to its main office and had it indorsed as cancelled several weeks before the fire, yet, as plaintiff was not notified of the cancellation up to the time of the fire, and the premium it had afterwards paid was not returned to it, the policy continued to be a valid contract of indemnity, and defendant was liable to plaintiff at that time on the facts which then existed.

The question then is, did the facts transpiring after the fire relieve such liability? When the loss occurred defendant's theretofore contingent liability, in point of fact and law, became a fixed and determined liability. But defendant here interposes the suggestion that Manley was in good faith claiming that the policy had been returned to the company and cancelled on the 12th of March. That that being his claim, Reynolds, with full knowledge of the facts, accepted the return of the portion of the premium which he had paid. That plaintiff had a claim on the policy "void or enforcible at its option," and that it elected to treat it as void and accepted the return of the premium money. Defendant likens the situation of the parties to that where, on account of non-compliance with certain provisions, policies have become forfeited and the insurer afterwards does something, by way of waiver, which rehabilitates the policy, citing as illustrations, Laundry Company v. Ins. Co., 151 Mo. 90 and McCollum v. Ins. Co., 61

Mo. App. 352. We do 'not think defendant's position is applicable to the case. The courts have refused to enforce forfeitures (which are ever regarded unfavorably) whenever it could be seen that the insurance company, in whose favor they are inserted in such contracts, had, itself, acted inconsistent with a desire to have them enforced. But no like situation is presented by this case. After the fire, plaintiff did not have a claim which was "void or enforcible at his option." It had a claim which was valid or invalid as it then existed. There was no option or election, as such, which plaintiff could exercise that would, in any way, effect the validity or invalidity of its claim. If it had a valid claim it could forbear to enforce it and let it become outlawed or it might otherwise act as any other free agent may. But there was no such condition as is presented by a void or enforcible claim at the option of the party concerned.

Nor can plaintiff's asserted release of defendant's obligation be regarded as a compromise. For though however valid a claim may be, if there is an honest belief by the debtor that it is invalid, it may be compromised. Yet, a compromise, like any other agreement, must be made understandingly. It must have been, of course, understood to be a compromise. No pretence was, or could be made to that effect, in this case. Plaintiff's counsel insist that after the fire there could not be a cancellation of the policy, since liability thereunder had become fixed. They cite as bearing them out in that proposition, Hollingsworth v. Ins. Co., 54 Ga. 294; Duncan v. Ins. Co., 133 N. Y. 88; Van Balkenberg v. Ins. Co., 51 N. Y. 465; and Ins. Co. v. Fordyce, 62 Ark. 562. But defendant distinguishes those cases from the one at bar by calling attention to the fact that in those cases, the cancellation was made in ignorance of the fire, while in this case the parties were advised as to the facts.

The true or real condition of the case is this: Plain-

tiff accepted the return of the premium money under the mistaken belief that in law the policy had been cancelled. If this act of Reynolds was an act which he had power to perform, and whether, when performed, influenced by such mistake of law as it was, it could be avoided in equity, need not be considered for the reason that, in our opinion, it was not within the power of Reynolds, general agent though he was, to give away the damages then accrued to plaintiff. As claimed by plaintiff, such damages were fixed and were assets of the plaintiff corporation, and it is not in the power of an officer of a corporation to give away its assets. For it is the law that, in the absence of habit or custom with the sanction of the corporation, he has no authority, even for a consideration, to convey the assets. Hyde v. Larkin, 35 Mo. App. 365. The subject was fully considered in the St. Louis Court of Appeals, through Judge BLAND, in Ferguson v. Venice Trans. Co.; 79 Mo. App. 352, and in Degnan v. Thoroughman, 88 Mo. App. 62. Such view is supported by decisions of the Supreme Court in Hutchinson v. Green, 91 Mo. 367, and Calumet Paper Co. v. Haskell Co., 144 Mo. 331; and also in Webb v. Lumber Co., 68 Mo. App. 546. And also the cases of K. C. Hay Press Co. v. Devoe, 72 Fed. Rep. 717, and Consolidated Water Co. v. Nash, 109 Wis. 490.

There is but one further point which might be considered as affecting plaintiff's right to recover and that is based on the facts surrounding the disposition of that part of the premium paid to the defendant for the insurance. As has been stated, $36.25 had been paid to defendant and then handed back to Reynolds. That sum was kept by Reynolds and was afterwards deposited in bank by him in the name of Manley, defendant's agent, and he was notified of the deposit. No objection appears to have been made to this, further than that it seems to have been ignored by Manley. The record does not show anything further than the deposit and notice. The tender of a certificate of deposit, like a check, if not

objected to, may be a valid tender. Gradle v. Warner, 140 Ill. 123. But there must, of course, be a tender of the certificate. It must be made to the party. The mere deposit in bank in the name of the party to whom a tender is desired to be made and notice to him is not a tender at all.

But was a tender from this plaintiff necessary, under the facts and the conclusions of law we have already stated? We think not. Reynolds had authority to pay the premium of the insurance. But he had no authority to receive it back as a consideration for renouncing, or giving up an asset of his corporation principal. That is a wholly different matter. As we have already shown, he had no authority to give away, or surrender up, plaintiff's claim. It was an asset, the title to which he had no right to alter. His acceptance of the money was a part of that unauthorized act in which he had no power to bind plaintiff.

We conclude that the court's order setting aside the nonsuit should be affirmed. All concur.