NORWICH UNION FIRE INS. SOCIETY, Limited, et al. v. PARAMOUNT FAMOUS LASKY CORPORATION.

No. 6262.

Circuit Court of Appeals, Ninth Circuit.

June 15, 1931.

Rehearing Denied July 22, 1931.

Redman, Alexander & Bacon, Orrick, Palmer & Dahlquist, and Herbert Chamberlin, all of San Francisco, Cal., for appellants.

Gavin McNab, Schmulowitz, Wyman, Aikins & Brune, Nat Schmulowitz, Ernest L. Brune, Miller & Thornton, and H. B. M. Miller, all of San Francisco, Cal., for appellee.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

The appellee suffered a loss by reason of the partial destruction of premises owned by it in the vicinity of Los Angeles. The fire occurred at 6 o'clock p. m. on January 16, 1929. On that morning the appellants, upon the application of James & Co., insurance brokers at San Francisco, issued, respectively, two instruments, each of which was designated "covering note" and an instrument designated "covering memorandum" (such instruments being otherwise termed, in the insurance world, as "binders"), covering the property which was later on the same day destroyed by fire. The two covering notes were in the same form, one of them specifying insurance in the sum of $25,000 in one of the three appellant companies, and the other specifying insurance in the sum of $50,000 in another of said companies; the "covering memorandum" specifying insurance in the sum of $50,000 in still another of said companies. Each of said covering notes stated that "insurance against loss or damage is thereby kept covered in the above named company and for the amount given above, subject to the printed conditions" of the California standard statutory form of fire insurance policy, in favor of appellee corporation, on its properties of designated character and location, at Los Angeles, "from Jan. 16, 1929, at 10 a. m. To cease Feb. 16, at noon, or such time prior thereto as the Company's policy may be issued on above described risk in lieu hereof." The "covering memorandum" was shorter, merely stating that "insurance against fire is hereby 'kept covered'" in favor of the same insured and upon the same property, "from Jan. 16, 1929, at noon M." and that "Insurance under this Covering Note is subject to all the printed conditions of policies now in use by the above named Company, and is to cease March 1, 1929, at noon, or at such time prior thereto as the Company's policy may be issued."

The only question in the case is as to whether or not James & Co., insurance brokers by whom said insurance was placed, were authorized by the appellee to secure such binder agreements, and, if not, whether the ratification of their act after the fire was sufficient to obligate the appellant companies under the binder contracts procured by James & Co.

The case was tried without a jury, pursuant to stipulation. The trial court denied a motion made by defendants (appellants) at the close of all the evidence for judgment in favor of defendants and a request for special findings. This ruling is assigned as error.

It appears from the evidence that the appellee usually procured insurance upon its Pacific Coast properties through the Behrendt-Levy Insurance Agency of Los Angeles, acting as insurance brokers. The Behrendt-Levy Agency, in placing large lines of insurance for the appellee, were in the habit of acting with and through James & Co., insurance brokers at San Francisco, as placing agents. According to a course of dealing for five or six years, it appeared that the appellee's customary method of procuring insurance was for A. C. Martin, manager of appellee's accounting department, having general charge of insurance matters for appellee on the Pacific Coast, to notify the Behrendt-Levy Agency that appellee desired a certain amount of insurance. In pursuance of this general instruction, the Behrendt-Levy Agency, either directly or through James & Co., procured the desired insurance in such amounts and in such individual companies as their judgment dictated. Before the procurement of the insurance contracts which are involved in this action, Martin, on January 11th, requested the Behrendt-Levy Agency to procure increased insurance by the following letter:

"Gentlemen: Will you kindly increase the coverage on the new four-unit sound stage, monitor room, et cetera, from $150,000 to $470,000; the sound-proofing building from $66,000 to $70,000; and the sound recording building from $90,000 to $110,000. I believe that these figures will represent the final coverage required on these three buildings.

"Would you also please increase the coverage on the sound-recording and reproducing equipment belonging to the Electrical Research Products, Inc., from $175,000 to $183,000. We are still short $7,500 of the coverage which we previously requested De-

cember 11th. Would you please check up on this.

"I would ask that you please arrange to submit a list of the companies with which you expect to place this additional coverage, for my approval."

In pursuance of this request the Behrendt-Levy Company telegraphed from their Los Angeles office to James & Co., at San Francisco, a request to place $320,000 additional insurance upon the property which was subsequently destroyed by fire. This amount, together with the existing insurance of $150,000 upon the property, made up a total of $470,000 insurance thereon.

The full amount of increased insurance requested was procured on January 14th. Thereafter, on January 16th, James & Co., under circumstances hereinafter narrated, secured $160,000 additional insurance upon these properties, thus increasing the total insurance to $630,000. The covering notes or binder contracts executed by appellants and involved herein constituted a portion ($125,-000) of the $160,000 insurance thus procured.

On January 14th the Behrendt-Levy Agency were at once advised by wire that the property was covered. A list of the covering agreements was forwarded to Los Angeles by mail and received in Los Angeles January 15th. Among the agreements was one of the Newark Company for $22,500 and one of the Philadelphia Fire & Marine for $200,000. After the hereinafter quoted telegram of January 12th had been sent, Mr. Paddack of the Behrendt-Levy Agency recalled that on January 7th they had received a letter from Martin in which it was stated that the appellee felt that its policies in the Newark and Philadelphia companies were in larger amount than should be carried in those companies, and it was indicated that the amounts of insurance in those companies should be decreased. In view of the importance of this letter, we quote it in full:

"There are certain companies now carrying our line of insurance which have policies coming up for renewal very shortly and which we feel we should drop altogether or in some cases materially reduce their limits.

"Referring to renewal policy No. 277568 of the Newark Fire Insurance Company issued January 6, 1929, for $47,000 covering film in laboratory and vaults. This company now carries close to $2,000,000 of our line in all locations, and we would like to see this reduced to around $500,000. Will you kindly bear this in mind when placing further insurance.

"We also have Globe Underwriters Agency policy No. P-137506 issued January 6, 1929, in amount $25,000 covering film in laboratory and vaults. We would like to discontinue carrying any of our coverage with the Globe and I am returning this policy herewith for cancellation. Will you kindly place this coverage with some other good company? We have $178,600 with this company and I would like you to place this coverage with other companies as the policies come up for renewal.

"I am listing below several companies having policies coming up for renewal in February and would like to have you place the coverage with other companies or reduce the limits in certain instances:

"Stuyvesant Insurance Company: We are now carrying about $500,000 with this Company. We would like to have the limit reduced to approximately $200,000.

"Importers and Exporters Ins. Co.: We are carrying about $62,000 with this company and would not care to have our limits increased over that amount.

"Philadelphia Fire & Marine Ins. Co.: We have approximately $640,000 with this company and would like to have the limits reduced to not more than $250,000.

"London & Provincial Ins. Co., Ltd.: We are carrying $23,500 with this company, which we would not care to have increased.

"There may be policies with other companies coming up for renewal at a later date, which we will wish to discontinue or reduce the limits on. I would therefore appreciate it if before placing future renewals you would check with me as to the companies, as we want to make certain that all our insurance is carried with what we consider good, substantial and reliable companies."

The Behrendt-Levy Agency thereupon, on January 14th, wrote a letter to James & Co., inclosing a copy of the above-quoted letter, quoting in confirmation the telegram of January 12th to James & Co., the pertinent part of which is as follows:

"Re conversation with Terhune November Paramount Famous Lasky Sound Stages One Two Three and Four * * * total insurance required four hundred seventy thousand now written one hundred fifty place three hundred twenty thousand concurrent on terminal naught four two Avery Colonial

Newark .desire increased lines this new construction * * *"

—the writer, "H. T. Paddack, Secretary" of the Behrendt-Levy Agency, goes on to say:

"When the writer was in San Francisco in the early part of November (you were in the East), we placed insurance on the new concrete sound proving building and the new sound recording building, these buildings being practically finished. We also placed insurance on the new sound stages of fireproof construction in the amount of around $66,000.

"I told Terry [L. P. Terhune, secretary-treasurer of James & Co.] at that time the total amount required was $470,000, and I believe he made a note of same. You will note in my wire that I stated that the Philadelphia, Colonial and Newark desire to increase their lines of this construction.

"However, since sending the wire, I remember a letter which Mr. Martin, the auditor of Paramount Famous Lasky, wrote me concerning lines in various companies, this letter being prompted by a letter he received from Mr. Henry Anderson, in charge of all insurance for Paramount Famous in the New York office.

"Mr. Anderson, of course, does not understand the difficulty in placing insurance on motion picture plants. Furthermore, he is used to having insurance written the same way as it is in New York. In other words, New York is practically on the same basis as San Francisco—no agents, everyone being a broker."

Then follows an explanation of the method of placing lines of insurance in New York, and mention is made of a visit of Mr. Levy and the writer to Mr. Martin, on which occasion an explanation was given him of "the difficulties that such large companies as the Newark, who are carrying a large line on this risk, have in writing this insurance through their treaty company as well as in securing outside insurance," and of the great increase in the number of policies that would result in following out Mr. Anderson's suggestion in a case where a line of insurance in large amount is canceled on a company and, in order to replace this, reinsurance is secured in smaller amounts. Continuing, the letter says:

"If we have to comply with Mr. Anderson's suggestion, it will mean the placing of all overlines; which are handled as reinsurance, as direct insurance and the Behrendt-Levy Insurance Company will lose five per cent commission on all this business * * *

"Mr. Martin is perfectly satisfied with the insurance as placed at present, but states that Mr. Anderson informed him that if the insurance could not be written in smaller amounts in various companies, he [Anderson] would place it all in New York. * * *"

The letter, further referring to the manner in which the insurance would be handled from New York, says, in substance, that this would be a very unsatisfactory way of handling the matter, from various indicated standpoints; and it is then said:

"I showed this letter from Martin to Mr. Terhune and Mr. Avery when they were here in the office. Terry, of course, was certain that things could be handled in the way desired by placing the line in many companies, but it would necessitate numerous policies and also the loss of commission to our office. Mr. Avery stated that where he had $640,000 in the Philadelphia, he would drop to $250,000. He would like to take the balance of this amount in the Fire Association as he does not want to lose this business.

"From the foregoing you will see that it would not be a good policy to place any additional insurance in the Newark or in the Philadelphia and this additional line on these nice fire-proof buildings will have to be placed in the other companies in our office.

"You will note that the companies mentioned in Martin's letter are the Stuyvesant, Importers and Exporters, Philadelphia and London & Provincial, and Newark. No mention has been made of the Hanover, Eagle-Star, Commercial Union, Norwich Union or Colonial. Mr. Anderson is making up a list of companies and the amounts he desires to be written in each company.

"The Globe & Rutgers is mentioned in the letter and evidently Mr. Anderson has had some trouble with this company in New York and does not want this company to carry lines on the plant. The fire insurance had better be placed in the Hanover, Commercial Union, Norwich Union, Colonial and Eagle-Star. * * *

"I would like your reaction on the above matter."

Upon the receipt of this letter a conference was held in the office of James & Co., and it was determined that additional insurance should be procured at once, and this was procured in the appellant companies.

The evidence tends to show that, in placing the insurance of January 16th, the purpose of James & Co., acting upon the letter of January 14th from the Behrendt-Levy Agency and the inclosed letter of January 7th from Martin, was to take out insurance that should be acceptable to appellee, having in view an arrangement later, if so instructed by the Behrendt-Levy Agency or appellee, for cancellation of the insurance placed with the Philadelphia and Newark, and consequent reduction of the total amount of insurance placed within the $320,000 called for by the telegram of January 12th. It would appear from the evidence that this cancellation could be effected by virtue of a "general custom among insurance men in relation to insurance obtained by binders" testified to by Mr. Paddack and not questioned in the record or in the briefs on appeal; such custom being "that very often more insurance is placed than is actually needed; the reason being the companies have to adjust their lines for cancellations that may go in effect anywhere from five to fifty days after the line is placed." The occurrence of the fire shortly after the placing of the insurance with appellant companies, while it prevented cancellation, did not affect the validity of the insurance placed with the appellant companies, because, in the circumstances existing at the time, the placing of that insurance was expedient and proper in the carrying out of one of the main purposes of the agency, which was the prompt placing of the insurance requested in companies not unacceptable to the insured. The fact that in placing the insurance of January 16th the total amount requested had been exceeded would not make the insurance invalid as not authorized, because a reasonable interpretation of appellee's instructions to its agents, in view of the custom of insurance brokers, implied authority to make a temporary coverage in excess of the amount specified, pending the action of the principal in reference to the final coverage.

The contention of appellants seems to be that, inasmuch as the policies obtained January 14th in the Philadelphia and Newark companies were not canceled, there was no replacement of the insurance placed with those companies on that date, and thus such insurance with the appellant companies was unauthorized, that said insurance was repudiated by Martin on behalf of appellee after the loss, and that the hereafter mentioned attempted ratification by Gain was not valid. The communications and dealings between Martin and the Behrendt-Levy Agency and James & Co. prior to the fire were communications between those acting in the capacity of agents for the appellee, which were in no way binding upon appellee and which had no effect upon the contracts of insurance between appellants and appellee, except as affecting the authority of James & Co. to make the contracts on behalf of appellee. Subsequent to the fire there were further communications between the agents of the appellee. These last-mentioned communications are set forth in the record, but they too have no bearing upon the case, other than as they tend to show the feeling and attitude of these agents among themselves with reference to their authority. Not being communicated to appellants, they did not influence their action. Inasmuch, however, as these communications are contained in the record, we will briefly state their import:

H. T. Paddack, secretary of the Behrendt-Levy Agency, called for defendants, testified that "on January 17, 1929, I received from Mr. Fox [manager of James & Co.] a telegram reading as follows: 'We do not consider yesterday's placements Famous Players as additional insurance. Shall we consider it void and original insurance only covering. This is important question. Discuss with Terhune and telephone this P. M.' "

The record contains no answer to this telegram.

On January 19th, three days after the fire, Mr. Martin wrote the following letter to the Behrendt-Levy Agency, signing as "Manager Accounting Department":

"With reference to the conversation between your Mr. Paddack, the adjusters and the executives of the Paramount Famous Lasky Corporation on January 18th, concerning the apparent mixup on account of over or additional insurance having been placed I wish to refer you to my letter of January 11th, in which I asked (in the first paragraph) for additional insurance on the new four-unit sound stage, monitor room, etc., to make a total insurance of $470,000.

"I also call your attention to the fact that the companies with which the additional insurance was to be placed were to be submitted for my approval. I know that you understand that this did not mean that you were to hold up placing the insurance, but rather to give me a choice, if there was any, as to what companies would be placed on this coverage. I think I appreciate the situation which caused the mix-up of the companies in that

you were attempting to get the insurance placed at the earliest possible moment but at the same time allow some leeway for a choice of companies. However, I feel that this should have been arranged in some manner whereby in no instance would we be actually carrying insurance for more than the $470,000 requested, and therefore, in my position with Paramount Famous Lasky Corporation, I naturally object to paying any premium for insurance over and above the $470,000. As I see it, any insurance placed above this amount does not in any way concern this corporation.

"I trust that the matter of having placed additional insurance over the amount required will be amicably settled, without this corporation being asked to consider paying a premium for any coverage over or above $470,000 on the buildings in question, and I am relying upon you to see if this cannot be arranged."

Under date of January 23d, Mr. J. J. Gain, executive manager of appellee corporation, wrote the following letter to the Behrendt-Levy Insurance Agency:

"I have read Mr. Martin's letter to you of January 19th in regard to the question of our paying premium on any amount of insurance taken out in our new sound stage building in excess of $470,000.

"Since the fire occurred before adjustment of the line could be effected and you and your representatives had full authority to place insurance for this corporation, I hereby sanction and ratify the full amount of the coverage as placed prior to the fire that occurred between 4:30 and 6:00 p. m. January 16, 1929."

It will be seen that the letter of January 19th from Martin to the Behrendt-Levy Insurance Agency amounts to a complaint as to the procurement of more than $470,000 insurance. Therein Martin gives it as his opinion that insurance for more than that amount does not concern the appellee corporation, and expresses the hope that the company can avoid paying the premium on the total amount of insurance requested. If this letter had been written to the appellants, the effect of it as an attempted repudiation of the contracts of insurance might be considered, and in this connection we would have to consider the question as to the power of Martin, as an agent of appellee, to cancel policies or repudiate them after a loss. See Cassville Roller Mill. Co. v. Aetna Ins. Co., 105 Mo. App. 146, 79 S. W. 720; Waterloo Lumber Co. v. Des Moines Ins. Co., 158 Iowa, 563, 138 N. W. 504, 51 L. R. A. (N. S.) 539. Inasmuch, however, as this communication is merely between agents of the appellee, it had no effect other than as an indication of Martin's opinion concerning the discussion in question.

It may here be said that the total loss which arose from the destruction of the insured property was $375,230.07, and that, under an apportionment that was made of this loss among the companies with which the total of $630,000 insurance was placed, the proportion of appellants the Norwich Union and the Allied Underwriters, upon the insurance placed with each of them in the sum of $50,000, were, respectively, $29,780.16 and $29,780.17, and the loss apportioned to appellant the Commercial Union, upon the insurance placed with it in the sum of $25,000, was $14,890.08, and that the amounts of loss apportioned among the insurance companies, other than appellants, who participated in said total insurance of $630,000, were paid by said other companies.

The evidence justified the conclusion of the trial court that the appellee authorized the placement of policies in appellant companies. Appellants are not concerned with the validity of the policies in the prohibited companies, except as those policies reduce the amount of the loss appellants are required to pay under the binder agreements issued by them.

Judgment affirmed.

SAWTELLE, Circuit Judge, concurs.