### INSURANCE CO. OF NORTH AMERICA v. DETROIT & SECURITY TRUST CO.

#### No. 6300.

Circuit Court of Appeals, Ninth Circuit.

June 15, 1931.

As Amended on Denial of Rehearing August 3, 1931.

Charles A. Strong, Redman, Alexander & Bacon, and A. B. Weiler, all of San Francisco, Cal., for appellant.

Chickering & Gregory, Evan Williams, and M. L. Crimmins, Jr., all of San Francisco, Cal., for appellee.

Before RUDKIN, WILBUR, and SAW-TELLE, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from a judgment in favor of appellee rendered in an action upon a fire insurance policy, which was in the form known as the California standard form, issued by appellant August 16, 1927, to the Feather River Pine Mills, Incorporated, a Nevada corporation, hereinafter referred to as the Feather River Company, to recover for a loss by a fire which occurred October 6, 1927.

Appellant claimed that the evidence was insufficient to support the judgment, and that its motion for judgment in its favor should have been granted by the trial court. The claim of the appellant is that its fire insurance policy, although duly and regularly issued before the fire, was not accepted by the Feather River Company, or, if accepted, had been repudiated and canceled by the Feather River Company. The policy was procured by Marsh & McLennan, insurance brokers, purporting to act on behalf of the Feather River Company. It cannot be seriously contended under the evidence that Marsh & McLennan were not authorized to apply for the policy in question, and the principal contentions of the appellant are based upon occurrences subsequent to the receipt of the policy by Marsh & McLellan, nevertheless we will indicate in a general way the evidence with reference to the authority of the brokers to procure the insurance in question.

The Feather River Company owned and operated a lumber mill and yard at Oroville, Cal. The property was incumbered by a trust deed to secure a bond issue which contained a proviso that the Feather River Company should keep the property insured against loss by fire to the extent of not less than 80 per cent. of the insurable value thereof, and each policy should be payable to the trustee as his interest might appear. A trust deed had been executed by the Hutchinson Lumber Company, predecessor to the Feather River Company, and the property purchased by the Feather River Company under a foreclosure proceeding of a second mortgage, a receiver having been appointed. The receiver, Mr. Fentress Hill, became the general manager of the Feather River Company, in pursuance of an agreement between the officials of that company and the creditors and bondholders. Marsh & McLennan had handled all the insurance upon the lumber plant for the Hutchinson Company and for the receiver, and, after the termination of the receivership, for the Feather River Company, for several years.

By the course of dealing between the Feather River Company and Marsh & McLennan, it had been assumed that these agents would keep the property insured in conformity with the obligation of the insured under the trust deed. Some months before the policy in question was procured, the insurance companies were demanding a higher rate due to a change in conditions at the plant caused by the construction of new buildings which reduced the space between the various units making up the plant, from 200 feet to about 30 feet. It was contended by the board of fire underwriters which establishes insurance rates that the premium should be increased from $1.39 per $100 to $3.14 per $100. This claim for increased premium resulted in several interviews between Marsh & McLennan and the officers of the Feather River Company regarding the increased rates and the establishment of an automatic fire-protection system to reduce the fire hazard, and thus to procure reduced rates. The sprinkling system was not established, and therefore the new rate of $3.14 per $100 made in April, 1927, remained in effect. During the period of negotiations with the board of fire underwriters with reference to the new rate and its possible reduction, Marsh & McLennan had procured policies which carried the insurance for sixty days, and when they could not get a definite

reduction of the insurance rate they arranged for carrying the insurance on "cover notes" which fixed no definite rate. It was, however, arranged that the rate should be lower than the amount fixed by the board of fire underwriters. Finally the companies insisted upon the surrender of the covering notes and the writing up of the policies at the higher rate. During this period Marsh & McLennan were insisting upon the installation of a sprinkling plant, or at least making a contract therefor, which it was assumed would have the effect of an immediate reduction in rates. This was not done before the issuance of the policy in question. Thereafter, Marsh & McLennan procured insurance in the sum of $348,750 in which was included the appellant's policy for $75,000 with a premium of $2,355, for the term of one year from July 15th. Marsh & McLennan were not only insurance brokers, but also agents for a number of insurance companies in which they issued policies covering a part of the $348,750 insurance. About September 1, 1927, all of these policies were forwarded by Marsh & McLennan to the Feather River Company and received by it at Oroville about September 1, 1927. The policy issued by appellant had been in effect nearly a month and a half at the time it was sent to the Feather River Company, if the application therefor was authorized. It was retained by the Feather River Company until September 15th, at which time the policy had been in effect for two months, and one-sixth of the premium had been earned. At the time these policies were returned, a letter was written by the Feather River Company to Marsh & McLennan directing them to cancel the policies and get new insurance, and stating that the Feather River Company would not pay premiums on these policies at the new rate. This letter, however, was written in pursuance of an agreement between the Feather River Company and Marsh & McLennan that such a letter should be written with a view to forcing the insurance companies to reconsider the rates established, and perhaps of getting better terms. In view of the fact that this letter from the officers of the company to its insurance brokers was not communicated by them to the appellant until after the fire, it is immaterial, except that it tends to show the view of the Feather River Company and its agents as to the authority of the agents with reference to the procurement of insurance.

It should perhaps be here stated that a different situation exists with reference to those insurance companies for which Marsh & McLennan was acting agent. The letter of September 15th from appellant to Marsh & McLennan directed them, in pursuance of the conversation of the day previous, to "cancel without charge to us for either the so-called earned premiums or otherwise, the following policies," including the policy issued by the appellant. The letter proceeds:

"The above policies were handed to you by the writer on yesterday with the advice that we would not pay for these policies and would not want any policies issued at figures above our old rate, namely, $1.391. * * *

"The writer understood that you would bind on yesterday General Form Contracts in amount of $348,250 or more" with certain companies named. " *  *  * It is understood that you will place all possible with the cheapest concerns.

"It is also understood that any and all renewals hereafter will be on the old basis with stock companies or with Reciprocals or Mutuals if the stock companies will not write at the rate.

"We appreciate very much your attitude in connection with our present desires on the subject and trust that we will be able to continue to secure your cooperation until the matter can be definitely settled by the signing of sprinkler contracts."

It will be observed that this letter is not based upon the claim that Marsh & McLennan had acted in excess of their authority as insurance brokers. It was also understood by Marsh & McLennan and by Feather River Company, that the policies could not be canceled without the payment of, or the obligation to pay, the earned premium, unless such premium was waived by the insurance company carrying the risk. It was also known by both that the refusal to pay earned premium could not affect the obligation to pay such earned premium. So understood, the letter merely amounted to an instruction by Feather River Company to its broker to procure new insurance and cancel the old, if possible, without paying any premium therefor. It is also recognized that the only hope of securing such an agreement from the insurance company was based upon the belief that the insurance company would be willing to make concessions in order to hold the business of the Feather River Company. Marsh & McLennan, in pursuance of this letter, procured additional insurance as directed for the sum specified, but did not direct the appellant to cancel the policy sued on. After the fire the policy was retained by Marsh

& McLennan until after October 10th, when it was returned to appellant without any authorization other than that in the letter of September 15th. On October 26th, Marsh & McLennan sent a check to the appellant to cover the premium upon the policy sued on, but this amount was returned by appellant December 5, 1927, to them and was credited in their accounts to the appellant. These transactions after the loss, however, are not material. Cassville Roller Mill Co. v. Ætna Ins. Co., 105 Mo. App. 146, 79 S. W. 720; Waterloo Lumber Co. v. Des Moines Ins. Co., 158 Iowa, 563, 138 N. W. 504, 51 L. R. A. (N. S.) 539.

The foregoing evidence justifies the conclusion of the trial court that the procurement of the policies in question was authorized by the Feather River Company, and that its instruction to cancel these policies had not been carried out before the fire, and that therefore the policies were in force at the time of the fire.

Appellant contends that even if it be held that the occurrence of the fire terminated the authority of Marsh & McLennan to cancel the policy in question, nevertheless they actually did so, purporting to act on behalf of the Feather River Company, and that the Feather River Company, with full knowledge of such attempted .cancellation, ratified the same by filing claims with insurance companies whose policies were not returned, for an amount based upon the assumption that the policy here involved and the other policies which were returned with it had been cancelled. The evidence tends to show, however, that in making claim against the other insurance companies every proof of loss was accompanied by letter of the Feather River Company setting forth the situation with reference to the disputed policies, including that issued by the appellant, and agreeing to a refund of any sums due in the event it should be decided that the disputed policies covered the property in question at the time of the fire. In this regard it is sufficient to say that the Feather River Company made it apparent that it intended to enforce its rights under the disputed policies, and did not intend by its claims filed against the companies which had issued other unquestioned policies, to waive its claim upon disputed policies. Such claims so made could not in any event be deemed a ratification by the Feather River Company of the attempted cancellation of the policies by the unauthorized act of its agents after the occurrence of the fire.

It should be borne in mind in this connection that under the terms of the various policies involved herein (which were in standard statutory form) a loss was to be prorated among them (Cal. Stats. and Amendments 1909, p. 404; Fireman's Fund Ins. Co. v. Palatine Ins. Co., 150 Cal. 252, 88 P. 907), and it was the duty of the claimant to pursue its remedy against the various companies with expedition. It is difficult to see how the Feather River Company could do either more or less than it did do to preserve its right to the disputed policies. The trial court was correct in its conclusion that the attempted cancellation after the fire had occurred was not ratified by the Feather River Company.

Appellant also contends that the insurance subsequently obtained by Marsh & McLennan was substituted insurance, and therefore, as soon as it became effective, discharged the existing policies upon the property including the policy of the appellant. In support of this contention the appellant cited the following cases: Finley v. New Brunswick Fire Ins. Co. (C. C.) 193 F. 195; White v. Ins. Co. of N. Y. (C. C.) 93 F. 161; Larsen v. Thuringia Amer. Ins. Co., 208 Ill. 166, 70 N. E. 31; Arnfeld v. Guardian Assur. Co. of London, 172 Pa. 605, 34 P. 580.

In the case at bar we have an unusual situation with reference to the procurement of policies. We have held that Marsh & McLennan were authorized to procure all the insurance that they did in fact procure, so that the question of authority to substitute one set of policies for another set, or one policy for another policy, is not strictly involved. After procuring the first set of policies (including that of appellant), the Feather River Company raising no objection whatever as to the authority of their agents to procure them, gave instructions to obtain cancellation of those policies, without payment of the portion of the premium which the policies provided should be paid by the insured in case of cancellation by it; and said company, without awaiting the outcome of its instructions, caused the second set of policies to be obtained, thus, with full knowledge of the co-existence of both sets of policies, assuming the risk that should their agents fail in the attempt to cancel the first set without payment of premium, the insured would be liable to retain those policies or to pay a portion of the premium as a prerequisite to, or condition of cancellation. The loss occurred before negotiations with reference to waiver or reduction of premium were consummated.

In these circumstances the filing of claims upon the second set of policies did not operate to ratify attempted cancellation, after the fire, of the first set of policies, particularly in view of the fact that in making claim upon what appellant terms the substituted policies the Feather River Company expressly reserved its rights under the policies first written. With reference to appellant's contention that other insurance had been substituted for the policy here involved, thereby discharging that policy, we hold that these facts distinguish the case at bar from the cases cited by appellant. In each of those cases the cancellation was by the insurance company, and it was not within the contemplation of the insured prior to or at the time of the fire, that the policies so canceled and the policies intended to take their place should be in force at the same time. It was in effect held in the cases cited that the insured could not ratify the act of the agent in procuring the new insurance and at the same time repudiate his action in accepting cancellation of the prior policies, the transaction in each case being virtually one and undivided and in pursuance of general authorization to insure the property for a specific amount. In such a case the acceptance of the new policy within the authorized amount necessarily ratified the action of the agent, taken because of cancellation by the insurer, in substituting the later policy for the prior one, such acceptance necessarily involving a ratification —if ratification were necessary in the circumstances—of the cancellation of the prior policy by the company which issued it. In the case at bar, as already stated, the authorization of the insured company to take out new insurance was specific and direct, but its authorization to cancel existing policies was contingent upon a cancellation without liability for premium. The policy did not permit such a cancellation without liability for premium, and therefore it was necessary to procure the consent of the insurer to cancellation; and this consent was never procured. The decision of the trial court upon this matter was correct.

The only remaining questions to be disposed of are the contentions of the appellant that, under the apportionment clause of the policy in suit, the amount of the loss apportioned to it should have been only 84 per cent. of the face of the policy, or $63,000, and that the court erred in not deducting from the judgment the unpaid premium of $2,355.

The first contention is based upon the proposition that the court should have determined, in rendering its judgment, that the entire $348,750 of insurance covered by the policies mailed to the Feather River Company by its brokers on September 1st was in effect, whereas the court concluded that those policies returned by the Feather River Company to Marsh & McLennan on September 15th were thereby canceled as to those companies for which they were acting as general agents, for the reason that as to such policies the communication was one to the agent of the insurance companies concerned, and therefore operated as a repudiation of the policy, whereas with reference to the other companies, including appellant, the communication was addressed to its own brokers and was not effective until transmitted by them to the insurance company concerned. The conclusion of the trial court was correct.

With reference to the contention that the trial court should have deducted the amount of the premium, it is sufficient to say that, while the appellant is clearly entitled to the amount of the premium, the obligation to pay the premium under the express terms of the policy rested on the Feather River Company, and not on the appellee, and that no effective claim was made therefor in the trial court.

Judgment affirmed.

SAWTELLE, C. J., concurs.