## H. R. Woolridge Company v. Smith

*James A. Naddeo,* for plaintiff.
*Laurence B. Seaman,* for defendant.

REILLY, *P.J.,* April 12, 1978 — The above complaint in assumpsit was heard by the court sitting without a jury. Plaintiff, H. R. Woolridge Company, a Pennsylvania corporation, is doing business as an independent insurance agency, while defendant, Richard J. Smith, is the owner and operator of a

trucking concern. Plaintiff seeks to recover from defendant funds paid to two insurance companies on behalf of said defendant who contends that said expenditures were not authorized. This court concludes that plaintiff was authorized to act for and on behalf of defendant and is, therefore, entitled to full recovery.

To 1976, plaintiff was the insurance agent for defendant. As such, it placed certain insurance coverage, including workmen's compensation, casualty, liability, collision and property damage with the Hartford Insurance Company. During a period of at least eight years, it was the custom of the parties for plaintiff to renew these policies automatically as they became due annually.

In 1972, Pennsylvania amended its workmen's compensation insurance requirements, making trucking companies, such as defendant's, which hauled raw, unprocessed coal, liable to their employes for black lung benefits, and said liability attached regardless of whether additional premiums were paid to the carrier for the expanded exposure. Prior to 1975, the Hartford did not charge defendant any additional premiums for this coverage, at which time said carrier was notified by the Pennsylvania Department of Labor and Industry that defendant's operation subjected it to the above-mentioned amendment. Thereupon, the Hartford audited defendant's workmen's compensation coverage and determined that the sum of $5,091 was due the Hartford for the additional coverage provided in the year 1975. Hartford instructed plaintiff herein to collect that amount from defendant, which plaintiff refused to do on the grounds that it had no obligation to so act.

When defendant's compensation insurance policy expired in 1976, plaintiff took steps to renew the policy, just as it had done in the eight previous years of its business relationship with defendant. However, several months after the policy was issued, Hartford informed plaintiff that the premium due was in excess of $26,000, a premium increase of almost $20,000. Because it knew defendant would be unable to afford this tremendous increase in premium, H. R. Woolridge Company asked Hartford to cancel the policy flat, as if it had not been renewed. Hartford refused to cancel flat, instead cancelling the policy pro rata, demanding a premium of $6,514 for the period during which the policy was in effect. This premium was paid by plaintiff, who interpreted its relationship with Smith as that of his agent, and with the insurance company as that of a debtor.

At this stage in the matter, Hartford was claiming that defendant owed it $5,091 for the 1975 audit, and plaintiff was claiming defendant owed it $6,514 for the money it paid on his behalf to Hartford. In the course of the foregoing events, plaintiff renewed the insurance on defendant's vehicles for the 1976-77 period. Coincidentally, this was also an automatic renewal with the Hartford Accident and Indemnity Company and included coverage for collision and general liability. The initial premium on this policy for a one-year period was $9,458. This premium was financed directly with Hartford and defendant made installment payments totalling $4,477. Subsequently, two endorsements were added to the policy covering new vehicles purchased by defendant. These endorsements in the amount of $4,663 and $1,481 were paid by plaintiff.

However, because of defendant's failure to pay the $5,091 audit (on the 1975 workmen's compensation policy), Hartford cancelled defendant's vehicle insurance and applied the payments already made, minus the earned premium, to that audit. Hartford determined there was still a balance due of $4,051, which it deducted from the money which plaintiff paid on the endorsement on defendant's new vehicles. Plaintiff is now asking for that $4,051 from defendant.

Finally, when Hartford cancelled defendant's insurance on his vehicles, defendant was still required by law to maintain this coverage. He instructed plaintiff to find him collision and liability coverage, something plaintiff was unable to do without a substantial period of delay. Plaintiff did, however, manage to procure liability insurance for defendant (allowing him to continue operating his vehicles) with the Transport Insurance Group. In applying for this insurance, plaintiff advanced $1,000 on behalf of defendant.

The first issue with which this court must deal is who, between plaintiff and defendant, should be responsible for the $6,514 which was paid on the workmen's compensation policy. Plaintiff contends that the course of dealing which had existed between plaintiff and defendant, and the applicable law of the Commonwealth, dictated his renewal of defendant's workmen's compensation insurance, and therefore entitles him to collect the money he spent toward that end. Defendant, on the other hand, argues that there wasn't any course of dealing existing between the parties, and even if there was, it was disrupted by the unusually large increase in the premium.

A course of dealing as defined in the Pennsylvania statutes is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct: Act of April 6, 1953, P.L. 3, as amended, 12A P.S. §1-205(1); 11 P.L.E. 81, §1. In the instant case, the court has no problem in determining that the years of plaintiff's automatic renewal of defendant's workmen's compensation insurance can fairly be regarded as establishing a common basis of understanding. The question then arises, was this sequence disrupted? Specifically, did defendant indicate to plaintiff that he wished to discontinue his workmen's compensation insurance? This court finds as a fact that he did not. John Gilliland and Jack Woolridge, agents of plaintiff, both testified that, while they did meet with defendant to discuss his financial problems, those meetings were in anticipation of a sharp rise in defendant's premiums; the parties met to discuss ways defendant could cope with this rise.

Additionally, plaintiff, as an insurance broker, is considered by law to be an agent for the insured: 16 Appleman, Insurance Law and Practice. §8725 (1968). The question of a broker's authority to act as the insured's agent must be determined from all pertinent facts and circumstances, together with the conduct of and communications between the parties, his authority arising principally out of his agreement with the insured: Id §8728. See also Holbrook v. Institutional Insurance Company of America, 369 F. 2d 236 (7th Cir. 1966). Courts tend to give a broker broad authority in acting to meet a client's needs. In Norwich Union Fire Insurance Soc. v. Paramount Famous Lasky Corp., 50 F. 2d

747 (9th Cir. 1931), a Federal court of appeals ruled that the fact that a broker, in placing insurance for a client, exceeded the amount requested, would not make the insurance invalid as unauthorized where this was, in view of custom, a reasonable interpretation of the client's instructions.

But while a broker's authority to purchase insurance for his client is broad, his authority to cancel is quite narrow. The trend seems to thwart any possibility that an individual may be stripped of insurance coverage against his will. A broker does not have general authority to cancel a policy in the absence of proof of specific authority to do so: 8 Appleman, Insurance Law and Practice §5045. This tenet has been clearly adopted in Pennsylvania: "Nor did Hirshorn [the broker], although he acted as the employer's agent in obtaining [workmen's compensation] insurance, have general authority to cancel the policy. There must be proof of specific authority so to do (Hendricks v. Continental Ins. Co., 121 Pa. Superior Ct. 390, 397, 183 A. 363; Jones et al. v. Dubuque F. & M. Ins. Co., 317 Pa. 144, 146, 176 A. 208), which, admittedly, is absent here." Stewart v. Mullineaux, 138 Pa. Superior Ct. 43, 45-46, 10 A. 2d 122 (1939).

It should be noted that the above case, like the instant case, involved workmen's compensation insurance. Such coverage is required by law, and therefore, special care is taken in instances where insurance is required to protect an individual from unjustly losing his right to do business. Conversely, those protections obligate the insured to some important responsibilities of his own.

In the instant case, the testimony does not indicate that plaintiff was instructed to cancel the workmen's compensation coverage from Hartford;

it does not prove that defendant told plaintiff to discontinue the coverage or to seek it elsewhere. Indeed, the testimony shows quite the contrary. Given the requirements of the statutes and the trend of the case law, plaintiff, as the insurance broker charged with caring for defendant's insurance needs, would have subjected himself to a possibility of a greater lawsuit had he failed to provide coverage. Therefore, plaintiff will be allowed to recover $6,514 he spent toward providing defendant with workmen's compensation coverage.

These same principles govern this court's decision regarding the automobile insurance. Plaintiff was entrusted with the responsibility of determining and providing defendant's insurance needs. The evidence does not reveal that plaintiff made anything less than a good faith effort to do just that, or that defendant specifically relieved him of that duty. Therefore, plaintiff is entitled to recover the $5,051 it advanced toward providing defendant with automobile insurance.

From the facts as presented in this case, one can only hope that the arrogance and complete disregard for customer satisfaction exhibited by the Hartford Insurance Company is unique only to that organization and not to the insurance industry in general. Unfortunately, said company is not a party to this suit and responsibility for financial restitution cannot be placed where it properly belongs.

Wherefore, the court enters the following

## ORDER

Now, April 12, 1978, following trial without jury in the above-captioned matter, judgment is awarded in favor of plaintiff and against defendant in the amount of $11,565.