# Ivert Larsen v. Thuringia American Ins. Co. of New York.

1. INSURANCE—*Ratification by Insured of Unauthorized Act of Insurance Agent.*—An insurance agent, in accordance with instructions, placed $2,500 insurance in several companies. Afterward one company refused the risk, and the agent, without consulting the insured, placed a like amount in another company. The insured, at the request of the agent, surrendered the policy of the company refusing the risk and received one in the new company. *Held,* that the act of surrendering the original policy and receiving another operated as a ratification of the agent's unauthorized act.

**Assumpsit,** on a policy of fire insurance. Appeal from the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed June 18, 1903.

BULKLEY, GRAY & MORE and FRED L. DIVINE, attorneys for appellant.

LACKNER, BUTZ & MILLER, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

Appellant, on January 19, 1899, procured a fire insurance policy of $500 from the appellee company on certain machinery, tools, implements, etc., owned by him in a building on Market street in Chicago, for the period of one year, and at the same time and through the same agent, one Bennett, he procured other insurance in other companies to the amount of $2,000 on the same property, and paid the premium therefor to Bennett, who, about said January 19th, delivered all the policies to appellant. On the morning of February 23, 1899, a fire occurred which injured the insured property. The loss was subsequently adjusted at the sum of $1,981.80, all of which, except the sum of $360.33, was paid to appellant by the other insuring companies than the appellee. No question is made as to the amount of the loss, but the only matter to be considered is as to whether there is any liability of the appellee

company under the said policy which is the basis of appellant's claim in this case.

Pursuant to the terms of the policy dated January 19, 1899, the appellee company gave notice, through its Chicago agency, to said Bennett to cancel it, and allowed Bennett until February 21, 1899, at twelve o'clock noon, to replace the insurance elsewhere, after which date, as the notice to Bennett reads, the company would cancel the policy on its books, and all its liability thereunder would cease and determine.    No notice of the cancellation of this policy by the appellee company was made known to appellant until after the fire.    Pursuant to the said notice from appellee to Bennett, he procured another policy running to appellant, of the same amount, upon the same property, from the North British & Mercantile Insurance Company of England, on account of which appellant paid no additional premium, but Bennett paid the premium to the North British Company from money of appellant.    This attempted substitution of the North British Company's policy by Bennett for the said policy issued by appellee was done before the fire occurred.    On the morning of and after the fire appellant came to Bennett, when the latter told him that the policy of appellee had been ordered canceled, and that he had replaced it in the North British Company, to which appellant replied in substance that it didn't make any difference so he got his $2,500 of insurance.    Several days afterward appellant again went to Bennett with a Mr. Flagg, an insurance adjuster whom he had employed to make out his claim and proof of loss and deliver the same to the various companies, when Bennett again explained to Flagg that the appellee company had canceled its policy the day before the fire, and that he, Bennett, had taken in its stead for appellant another policy with the North British Company.    At this same time the policy of appellee was returned to Bennett, either by appellant or by Flagg with appellant's consent, upon the statement of Bennett that the policy of the North British Company was intended to replace appellee's policy, upon the assumption that it had

been canceled. After this, by agreement between the adjusters of the insurance companies, except the appellee, and Flagg, representing appellant, the loss was fixed at $1,981.80, and apportioned between the different compa- nies upon the basis of $3,000 insurance upon the property. This apportionment of the loss is apparently based upon the following provision which was contained in each of the policies, viz:

" This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property."

Each of the insurance companies, including the North British Company, paid its agreed *pro rata* share of the loss to appellant, but appellee took no part in the adjustment of the loss nor its apportionment, and refused to pay.

Appellant's counsel concede that there are no disputed questions of fact, and argue that the only matters to be considered are, first, whether Bennett was appellant's agent; second, was the notice of cancellation given to Bennett any notice to appellant; and, third, did appellant, after the fire, ratify Bennett's action in canceling the policy of appellee and issuing the new policy for the same amount of the North British Company to appellant.

For the purposes of this decision it is unnecessary, in our opinion, to discuss the first and second questions. It may be conceded that Bennett was not appellant's agent to receive notice from appellee of its order or request to can- cel its policy, and that the notice of cancellation to Ben- nett was not a notice to appellant. We think, from the facts above stated and a consideration of the whole record in the light of counsel's argument, that appellant con- sented to and fully ratified the acts of Bennett in receiv- ing notice from appellee of the request to cancel its policy, in making the attempted cancellation thereof, and in issuing to appellant, through Bennett, the North British Company policy in substitution for the policy of appellee.

It will not and can not be disputed that appellant could have done, had he seen fit, all that Bennett did, as shown by this record, whereby he assumed to act for appellant. If appellant could have done what Bennett did, then Bennett's action was not wholly void, as contended by learned counsel of appellant. His acts must be considered only as without authority; but when consented to and acquiesced in by appellant, after a full statement to him by Bennett of what the latter had done, appellant thereby ratified and made the acts of Bennett his own. It is claimed for appellant that there was no consideration passing to him for the cancellation and surrender of appellee's policy, but this is not tenable. The receipt by him of the policy of the North British Company, on which he has collected $360.33, is a consideration.

On the question of ratification, especial reliance is placed by appellant's counsel on the case of Hartford Fire Insurance Co. v. McKenzie, 70 Ill. App. 615, but we think, from a careful reading of this case, it has no application to the facts here, and we therefore think it unnecessary to review it.

That the acts of Bennett were ratified by and became binding upon appellant, so as to preclude any recovery against the appellee, we think is supported by the following authorities: 1 Am. and Eng. Ency. Law (2d Ed.), pp. 1181 and 1184, and cases cited; Arnfeld v. Assurance Co., 172 Pa. St. 605; Mechem on Agency, 167; Bishop on Contracts, Secs. 1108 and 1109.

The judgment of the Circuit Court being, in our opinion, correct, it is affirmed.