IVERT LARSEN

v.

THE THURINGIA AMERICAN INSURANCE COMPANY.

*Opinion filed February 17, 1904.*

1. PRINCIPAL AND AGENT—*general rule as to ratification.* One may ratify an act done by another if he could himself have done the same thing in the first instance.

2. SAME—*legal effect of all facts need not be understood to make ratification binding.* While a person is entitled to know all the material facts. before he will be bound by ratifying the act of an agent, yet it is not essential that the legal effect of the transaction, and particularly of other transactions ancillary thereto, be explained to him by the parties claiming the benefit of the ratification.

3. INSURANCE—*insured may ratify the agent's transfer of insurance.* Where an agent employed to procure fire insurance receives notice from one of the companies carrying the risk to cancel its policy, and without notice to the insured transfers the insurance to another company, if the insured, after the loss and being informed of the facts, elects to accept the new policy and surrenders the old one he cannot hold the former company liable, even though the other companies, in adjusting the loss, treated the former policy as subsisting in figuring the total insurance.

*Larsen v. Thuringia American Ins. Co.* 108 Ill. App. 420, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES A. BISHOP, Judge, presiding.

BULKLEY, GRAY & MORE, (FRED L. DIVINE, of counsel,) for appellant.

LACKNER, BUTZ & MILLER, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the First District affirming a judgment of the circuit court of Cook county for costs in favor of appellee, in a suit brought by appellant against appellee, in an action of assumpsit on an insurance policy. The

cause is here upon a certificate of importance.   Trial was had before a jury in the court below, and at the close of the evidence the court directed the jury to find the issues for the defendant, which was done and judgment for costs entered upon the verdict.   No other instructions were offered, and no questions of law are raised except as to the propriety of the court giving the instruction directing a verdict.

Appellant is a machinist doing business in the city of Chicago and owning a machine shop on Market street, in that city.   One N. J. Bennett was an insurance agent and solicitor, who sought and received business not only for companies that he represented, but procured insurance in companies that he did not represent.   On the 19th day of January, 1899, appellant called upon Mr. Bennett and directed him to write, or have written, $2500 insurance upon his (appellant's) machine shop.   Appellant did not direct what companies the insurance should be placed with, nor was anything said, at the time, as to the number of policies, or the amount of each, that should be written.   The evidence discloses that Bennett had for some time had the insurance business of appellant and was acquainted with him and his building upon which insurance was sought, and on or about the same day that the request for the insurance was made, Bennett either wrote or procured for and' delivered to appellant three policies: one in the Merchants' Insurance Company for $1000, one in the North German Insurance Company for $1000, and one in appellee company for $500.   On the morning of February 23, 1899, the property insured was partially destroyed by fire, and by all the companies, except appellee, that were interested the loss was adjusted at $1981.80, and the amount of the loss is not questioned by appellee.   Of the loss $360.33 was not paid, and for that this suit was brought.

The only question is as to the liability of appellee under the policy issued by it.   The policy contained a

condition or provision for cancellation, by the terms of which it might be canceled at any time at the request of the insured, or by the company, by giving five days' notice of such cancellation. If canceled by the company upon notice, the company was only to have the *pro rata* premium for the time it carried the risk.

On the 21st day of February, Bennett, the agent, received from appellee a notice that it had elected to cancel its policy, and that the holder would be allowed until the 21st day of February, 1899, at twelve o'clock, to replace the insurance elsewhere. Upon receipt of this notice, Bennett, the agent, re-placed the insurance to the amount of $500, being the same amount as appellee's policy, in the North British and Mercantile Insurance Company, paying the premium therefor out of the rebate from the Thuringia policy, as the evidence tends to show, or, at all events, without charging any premium to appellant. The policy in the North British and Mercantile Company was kept by Bennett until after the fire, as he did not see appellant from the time he received the notice until the day of and after the fire. At their first meeting after the fire Bennett told appellant of receiving the notice from appellee and of the cancellation of its policy, and that he, Bennett, had placed the insurance with the North British and Mercantile Company, and appellant testifies that he then said it didn't make any difference to him, just so he got his $2500 of insurance. After the fire appellant engaged the firm of Peckham, Flagg & Peckham, who were insurance adjusters, to represent him in the matter of his policies, and Mr. Luther N. Flagg, of said firm, did take charge of appellant's policies and represented him. After Flagg had received the policies of appellant, and before the adjustment, they together met Bennett, who explained to both Flagg and appellant the transaction of the cancellation of the policy issued by appellee and of the re-placing of that insurance in the North British and Mercantile Company, and

thereupon requested that appellant deliver up to him, Bennett, the policy issued by appellee and receive in lieu thereof the one issued by the North British and Mercantile Company, to which appellant assented and which was done. After receiving this policy, Flagg, representing appellant, and adjusters representing the Merchants, the North German and the North British and Mercantile Insurance Companies, met and agreed that the extent of appellant's loss was $1981.80, as above stated, but it there appeared that each of the policies there represented contained the provision: "This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property." Those companies represented at the adjustment insisted that at the time of the fire appellee's policy was still a subsisting policy, and that the above provision of their policies (and there was the same provision in appellee's policy) was broad enough to require that in prorating the loss among the companies the policy held by appellee must be taken into consideration and the basis of the insurance fixed at $3000 instead of $2500. To this contention appellant assented, and the proportion that it was agreed between appellant and the adjusters that should be charged to appellee's policy was $360.33. As we have said, appellee was not represented at the adjustment and did not agree to the basis fixed there.

The facts as above set forth are undisputed, and the only question remaining is as to the liability of appellee under them.

The appellee contends that it is not liable upon two grounds: First, that appellant could and did ratify the acts of Bennett after being fully informed as to them; and secondly, that if Bennett was not the agent of ap-

pellant, but was the agent of appellee, and by its direction canceled its policy and procured other insurance in the place of it, appellant was fully and fairly informed as to the entire transaction, and he was put to his election whether he would rely upon the policy issued by appellee or whether he would take the policy issued by the North British and Mercantile Company in lieu thereof, and that he did elect to and did receive the latter policy, and the evidence shows, and it is undisputed, that appellant received from the North British and Mercantile Company the proportion of the loss that it was agreed at the adjustment should be paid by it. Appellant's contention is, that Bennett was not his agent for the purpose of canceling or consenting to the cancellation of appellee's policy, and did not represent him when he re-placed the insurance covered by appellee's policy in the policy of the North British and Mercantile Company, and that as he had no knowledge of the transaction until after the fire and the loss had been incurred, it did not lie in his power then to ratify any agreement by which appellee would be released from a liability that had become fixed and substitute another therefor, and that appellant received no consideration for such agreement, if it was made. It is not claimed by appellant that he was at any time to have more than $2500 insurance upon his property. The North British and Mercantile Company at no time denied its liability, but acknowledged the same and paid according to the adjustment.

We can see no reason, and none has been pointed out, why appellant could not ratify the acts of Bennett, if they were not authorized at the time they were done, if he was fully and fairly informed as to such acts, and why such ratification would not and ought not to be binding upon him. The general rule seems to be, that one may ratify that which is done by another if he could have himself done the same thing in the first instance. (1 Am. & Eng. Ency. of Law,—2d ed.—1184; *Zottman* v.

*SanFrancisco*, 20 Cal. 96; 81 Am. Dec. 96.)   It is said that
"ratification, as it relates to the law of agency, is the
express or implied adoption of the acts of another by
one for whom the other assumes to be acting, but with-
out authority; and this results as effectually to establish
the duties, rights and liabilities of an agency as if the
acts ratified had been fully authorized in the beginning."
(1 Am. & Eng. Ency. of Law,—2d ed.—1181.)

Appellant does not contend that he was not fully ad-
vised as to all the facts relating to the cancellation of
appellee's policy and the issuance of the policy to re-
place the same, which was received by him, but counsel
now urge that he would not have accepted the same had
he known that in the adjustment of his loss appellee's
policy must be taken into account in determining the
whole amount of insurance.   We are not called upon to
determine whether, as a matter of law, the insurance
companies at that adjustment had the right to make the
insistence that the insurance should be prorated upon
the basis of $3000 insurance instead of $2500.   If they
did have that right, it was not due to any newly discov-
ered or undisclosed fact between Bennett and appellant
at the time appellant accepted the policy in the North
British and Mercantile Company and surrendered the
policy issued by appellee, because all the policies that
appellant had, including that of appellee and the one
that he received in lieu thereof, contained the provision
relied upon by the adjusters for the other companies,
and their right to such insistence and the duty of appel-
lant to yield to the same in the adjustment of his loss
was a question of law, and not a question of fact.

It is a familiar principle that though one may be
entitled to be invested with all the facts pertaining to a
transaction before he can be bound, it is not incumbent
on the part of those who claim he is so bound to explain
to him the legal effect of the transaction, and certainly
not of other transactions ancillary thereto and growing

out of and arising from the subject matter thereof. Without the agreement of the appellant to accept the North British and Mercantile Company's policy in lieu of the policy held from appellee, it may be well doubted if appellee's liability would have been released or affected by anything that had transpired up to that time, and, also, without the surrender of appellee's policy by appellant as a condition and consideration for the receiving of the policy of the North British and Mercantile Company it may well be doubted if that company could have been held liable for any part of the loss; but it would seem that when appellant was fully advised as to the transaction and assented thereto, and delivered up his policy in the appellee company and received the policy in the North British and Mercantile Company, and received payment on that policy according to his agreement with the adjusters, it cannot lie in him now to say that there was no consideration for the surrender of the policy issued by appellee and that appellee is not relieved from liability by that transaction.

Counsel for appellant urge that the case of *Hartford Fire Ins. Co.* v. *McKenzie,* 70 Ill. App. 615, is in point, and in effect holds that under the circumstances of this case there could be no ratification of the acts of Bennett, the agent. We are unable to adopt the view of that case as urged by appellant. There the notice of cancellation was, as here, given to the agent, and the agent started to write, or began to write, a policy in the Hartford company on the same property. He did not, however, do so, but he did go through the process of making charges on his books against the insured for the new policy and credited the insurance company with the same. Before the policy was issued and before the insured had any knowledge of such policy his property was destroyed, and he elected to surrender or agreed to the cancellation of the first policy and the acceptance of the second, but the Hartford company, whose policy was the second, de-

nied liability; denied the authority of its agent to take the risk, which was extra-hazardous and had been refused by several companies, without its knowledge, and denied liability upon the further ground that its policy provided that it should be void if there was any other insurance, and it was held in that case that as the first policy was not released at the time of the loss or the cancellation consented to by the insured, it was subsisting insurance and avoided the Hartford policy.

We regard the case of *Arnfeld & Son* v. *Assurance Co.* 172 Pa. St. 605, as very similar in its facts to the facts of the case at bar, and the reasoning of that case very cogent and in support of the views we entertain.

We think upon both grounds, that of ratification and election, under the facts disclosed by this record, appellant was bound by the bargain he had advisedly made, and that the judgments of the circuit and Appellate Courts are right, and the judgment of the Appellate Court is affirmed.                          *Judgment affirmed.*