FINLEY v. NEW BRUNSWICK FIRE INS. CO.

(Circuit Court, E. D. Washington, E. D. October 27, 1911.)

No. 1,528.

INSURANCE (§ 234*)- RESCISSION OF CONTRACT—ASSENT OF INSURED TO SUBSTITUTION OF POLICIES.

Plaintiff held three insurance policies for $2,500 each on certain lumber, one of them issued by defendant, which instructed its agents to cancel the same. On receipt of the instructions, the agents, assuming also to act for plaintiff, procured another policy for a like amount in another company, intending it as a substitute for defendant's. On the next day the property was destroyed by fire. Plaintiff accepted the new policy, and sued and recovered judgment thereon. *Held*, that by such acceptance he ratified the acts of the agents, and assented to the substitution, and could not recover from defendant, although its policy had not been formally canceled at the date of the loss.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 506; Dec. Dig. § 234.*]

At Law. Action by J. D. Finley against the New Brunswick Fire Insurance Company. Judgment for defendant.

Henley, Zent & Cannon, for plaintiff.

Happy, Winfree & Hindman, for defendant.

RUDKIN, District Judge. This is an action on an insurance policy. On and prior to the 20th day of August, 1910, the plaintiff was the owner of certain mill products, described in the policy as follows:

"Lumber of every description, their own or held by them in trust or on commission, or sold but not removed, situate on lots six and seven and the east ¼ of the southwest quarter of section six, township 31, north of range forty-five, E. W. M. at Graham Mill, about seven miles from Newport, Washington."

On the above date this property was covered by two policies of insurance in the sum of $2,500 each, expiring on the 19th day of May, 1911, and by a third policy in a like sum, issued by the defendant company, expiring on the 13th day of June, 1911. Rogers & Rogers of the city of Spokane were local agents for the defendant company, and for many years had represented the plaintiff in looking after his insurance business in a limited way. The scope of their authority as agents for the plaintiff is not definitely fixed by the testimony, and I deem it unnecessary to determine that question at this time, in view of the conclusion I have reached as to other questions involved in the case.

On the 16th day of August, 1910, the president of the defendant company wrote Rogers & Rogers at Spokane, instructing them to take up the policy in suit and return the same to the home office at San Francisco, for the reason that the company was unable to write any lumber yards outside of the city limits of Spokane proper, unless the policy form carried the three-fourths value clause. This letter was received by Rogers & Rogers on the morning of August 20th. Thereafter, and on the same day Rogers & Rogers, assuming to act for the plaintiff, took out a fourth policy in the Western Empire Insurance Company for the sum of $2,500, covering the same property. On the following day the property was destroyed by fire. Two days later Rogers & Rogers tendered the last-named policy to the plaintiff, informing him at the same time that they had been instructed to cancel or take up the policy in suit. The plaintiff informed them that the property had already been destroyed by fire and refused to accept the Western Empire policy, referring the agents to his attorney. The policy was then tendered to the attorney, who was given substantially the same information. The Western Empire policy was thereafter delivered and accepted by the plaintiff.

On or about September 1, 1910, proofs of loss were furnished, fixing the sound value of the property at $4,935.18, and apportioning the loss between the four companies on the basis of $1,233.80 to each policy.

On the 13th day of October, 1910, the defendant company denied liability, and this action was thereafter commenced. An action was also commenced on the Western Empire policy in the superior court of Spokane county, and a judgment was there given in favor of the

plaintiff for its proportionate share of the loss. The present action is to recover the portion charged or assigned to the defendant company.

The sole defense interposed is that the policy in suit was canceled and superseded by the Western Empire policy, which the plaintiff accepted and entered suit upon.

As already stated, the testimony tending to show the exact authority vested in Rogers & Rogers as agents for the plaintiff on the 20th day of August, 1910, is indefinite rather than conflicting. This much, however, is clear. The Western Empire policy was taken out by Rogers & Rogers, assuming to act for the plaintiff, for the purpose of replacing the policy in suit, which they had been instructed to take up and return, and not for the purpose of increasing the amount of insurance already on the property. This object or purpose was made known to the plaintiff before he accepted and brought suit on the Western Empire policy. The facts and circumstances in the case fully demonstrate this. On the morning of August 20th the property was insured in the sum of $7,500, or in one and one-half times its full or sound value; the plaintiff had not applied for further insurance, and did not know that such an application had been made in his behalf. The new policy was taken out immediately upon the receipt of instructions to cancel one of the existing policies, and manifestly as a substitute for the existing policy, and not as new or increased insurance. Under these circumstances the property was never insured in excess of $7,500, and was never covered by more than three policies. And assuming for the purposes of this case that Rogers & Rogers had no authority to cancel the policy in suit, or to substitute another policy in its place, yet, when the plaintiff was informed as to what had taken place, it was incumbent on him to elect which policy he would claim under. If Rogers & Rogers acted without authority, he might disavow their acts, and claim under the three old policies which were in force at the time of the fire, or he might ratify the substitution which his agents had made in his behalf, and without authority; but manifestly he could not do both. He could not claim the benefit arising from the act of his agents in taking out a policy, and at the same time repudiate the object and purpose for which the new policy was obtained. These conclusions would seem inevitable from a mere statement of the facts, and are amply supported by the authorities.

In Arnfeld v. Guardian Assur. Co., 172 Pa. 605, 34 Atl. 580, the insurance broker acted, or attempted to act, for both parties in substituting one policy for another, as was done in this case, and the trial judge was requested to instruct the jury as follows:

That "if the jury believe from the evidence that the plaintiffs, by their agent, Charles Zugschmidt, on the 10th day of May, 1893, took out a policy in the Queen Insurance Company for $2,500 upon the same property as that covered by the policy in suit, and that their purpose in so doing was not to increase their line of insurance, but to substitute the policy in the Queen in the p'ace of the policy in suit, because the defendant had given notice on the 8th of May, 1893, to cancel the policy in suit within five days, in accordance with its terms, and the Queen Company recognized their responsibility.

and paid the plaintiffs the amount covered by their policy, the moment the risk was covered in the Queen, the policy in suit was thereby "canceled, the defendant released, and the verdict should be for the defendant."

This request was refused, and in reversing the judgment the Supreme Court said:

"The court below being of opinion that as plaintiffs had the right to take out double insurance, and as the five days in which they were requested to have the first policy canceled had not expired at the date of the fire, and as the policy was still in possession of the plaintiffs, without any direct return to them of, or offer to return, unearned premium, the policy was still in force, declined to give the instruction prayed for. The only question, then, is, Should this point have been affirmed? It may be conceded .that. there was no formal, technical cancellation of the policy issued by the defendant. It was in possession of plaintiffs. Defendant had not returned or offered to return to them the premium. But was there a substitution of the liability of a third party for that of the defendant by the consent of the plaintiffs, defendant, and the third party? Defendant's contract was one of indemnity in a fixed amount against loss by fire on certain goods. A third party, the Queen Insurance Company, took its place, and indemnified plaintiffs against precisely the same loss, in the same amount, on the same goods, then stood by its contract, and paid the loss. This was a complete and effectual substitution of another insurer in place of defendant, and this by the consent of all parties interested; for it is not important to discuss the exact authority of an insurance broker, as Zugschmidt was, and determine to what extent he was the agent of the insured and the insurers. That is where the line should be drawn. It is undisputed he acted throughout for the plaintiffs and for both companies, and communicated with both; and all consented and ratified his acts. Nor is it controlling that there was no formal cancellation or surrender of the first policy. The plaintiffs got the policy in the Queen Company, and, what is more important, got the money upon it. The premium they had paid to the defendant, in so far as they were entitled to a return of it, is owing by the defendant, through the broker, to the Queen Company, to whom the broker, acting for plaintiffs, transferred defendant's liability. Plaintiffs ought to have surrendered after cancellation defendant's policy. What ought to have been done equity will consider as having been done. The case is not unlike that of a creditor who has taken surety for a debt. The surety declines to be longer responsible. The debtor procures a new surety, acceptable to the creditor, who takes the place of the first on a new note. The creditor retains possession of the old note. The new surety pays the debt. The creditor sues the surety on the old note, alleging it had never been formally delivered up or canceled. In such case the learned judge of the court below would very promptly have said that, if a creditor be once paid, his mere possession of the old note would not warrant the exaction of a second payment of the same debt. It seems to us there is no distinction between the supposed case and the one before us, except that the first is a contract for suretyship and the second of indemnity. The injustice worked by permitting a second recovery in the one is the same as in the other. No party ought to be allowed to recover twice for the same debt, no matter how many instruments evidencing the amount of his debt he may hold, nor how many distinct obligors there may be on them. Most creditors are content if their debt be paid once. All ought to be."

True, in this case, the Western Empire Company did not admit its liability and has not paid the substituted policy, but it is equally true that the plaintiff has asserted his rights under it, and has recovered a judgment upon it. 31 Cyc. 1280.

In Larsen v. Thuringia American Ins. Co., 208 Ill. 166, 70 N. E. 31, the court said:

"The facts as above set forth are undisputed, and the only question remaining is as to the liability of appellee under them. The appellee contends that it is not liable upon two grounds: First, that appellee could and did ratify the acts of Bennett after being fully informed as to them; and, secondly, that, if Bennett was not the agent of appellant, but was the agent of appellee, and by its direction canceled this policy and procured other insurance in the place of it, appellant was fully and fairly informed as to the entire transaction, and he was put to his election whether he would rely upon the policy issued by appellee, or whether he would take the policy issued by the North British & Mercantile Company in lieu thereof, and that he did elect to and did receive the latter policy, and the evidence shows, and it is undisputed, that appellant received from the North British & Mercantile Company the proportion of the loss that it was agreed at the adjustment should be paid by it. Appellant's contention is that Bennett was not his agent for the purpose of canceling or consenting to the cancellation of appellee's policy, and did not represent him when he replaced the insurance covered by appellee's policy in the policy of the North British & Mercantile Company, and that, as he had no knowledge of the transaction until after the fire and the loss had been incurred, it did not lie in his power then to ratify any agreement by which appellee would be released from a liability that had become fixed and substitute another therefor, and that appellant received no consideration for such agreement after it was made. It is not claimed by appellant that he was at any time to have more than $2,500 insurance upon his property. The North British & Mercantile Company at no time denied its liability, but acknowledged the same, and paid according to the adjustment. We can see no reason, and none has been pointed out, why appellant could not ratify the acts of Bennett if they were not authorized at the time they were done, if he was fully and fairly informed as to such acts, and why such ratification would not and ought not to be binding upon him. The general rule seems to be that one may ratify that which is done by another if he could have himself done the same thing in the first instance. 1 Am. & Eng. Ency. of Law (2d Ed.) 1184; Zottman v. San Francisco, 20 Cal. 96, 81 Am. Dec. 96. It is said that 'ratification as it relates to the law of agency is the express or implied adoption of the acts of another by one for whom the other assumes to be acting, but without authority; and this results as effectually to establish the duties, rights, and liability of an agent as if the acts ratified had been fully authorized in the beginning.' 1 Am. & Eng. Ency. of Law (2d Ed.) 1181."

In White v. Ins. Co. of New York (C. C.) 93 Fed. 161, the court said:

"If the broker's acts were originally authorized or subsequently ratified, only the new policies were in force. If not authorized or ratified, only the old policies were in force. If it is true that the old insurance was in force, because the policy had not been delivered up by the plaintiffs at the time of the fire, then it is equally true that the new policies were not in force, because they had not been accepted by the plaintiffs. If, under the circumstances, there could be a ratification after the loss—a question which it seems unnecessary to decide in this case—we would be compelled to apply the rule that, if a principal ratifies that which favors him, he ratifies the whole. Gaines v. Miller, 111 U. S. 395 [4 Sup. Ct. 426, 28 L. Ed. 466]. If a ratification of the taking out of the new policy was made, that would necessarily be equivalent (under the undisputed evidence) to a ratification of the cancellation of the old insurance. I find, therefore, that at the date of the loss only $100,000 of insurance was in force."

The proof of loss furnished by the plaintiff apportioned the loss equally between all four companies, and it is claimed that the defendant company participated in this adjustment. If this claim were established by the testimony, the defendant would perhaps be estopped to disavow liability, but there is no testimony in the record tending

to show that the agent who adjusted the loss for other companies was also an agent for the defendant company; in fact, the record tends rather to show the contrary.

Again, it is claimed that the premium on the policy in suit·was remitted to the defendant company long after the destruction of the property. As to this claim, it is perhaps sufficient to say that no such issue is presented by the pleadings. The complaint alleges the execution and delivery of the policy and "that thereupon the said plaintiff paid to the said defendant the sum of fifty-six dollars and twenty-five cents ($56.25), and the said insurance policy became and was in full force and effect from and after noon on the 13th day of June, 1910, and continued in effect at all times thereafter as herein mentioned."

The inference from this would be that the premium was paid on the execution of the policy. Furthermore, such was the effect of the course of business adopted by the insurance agents. Upon the execution of a policy, the insurance company was credited with the amount of the premium, and a like amount was charged to the agents. On the other hand, the insured was charged with the amount of the insurance in favor of the agents. The relation of debtor and creditor was thus established between the agents and the insurance company and between the insured and the agents; not between the insured and the insurance company.

Again, it is said that the defendant could not cancel the policy without tendering back or refunding the premium paid. This much might be conceded if this were a simple case of cancellation, but the rule has no application where one policy is substituted for another by consent.

I am therefore of opinion that the plaintiff is not entitled to recover, and findings and judgment will be entered accordingly.