[File No. 6701]

STATE OF NORTH DAKOTA, Doing Business as The North Dakota Mill and Elevator Association, Appellant, v. HARTFORD STEAM BOILER INSPECTION & INSURANCE COMPANY, a Corporation, Respondent.

(1 NW(2d) 52)

Opinion filed November 22, 1941

*Alvin C. Strutz,* Attorney General, *C. F. Kelsch,* Assistant Attorney General, and *Phil B. Vogel,* for appellant.

*Nilles, Oehlert and Nilles,* for respondent.

NUESSLE, J.   Plaintiff, the state of North Dakota, doing business as the North Dakota Mill and Elevator Association, brought this action to recover money claimed as return premium on account of the cancelation of certain policies of insurance.   The case was tried to a jury. At the close of the plaintiff's case the defendant moved for a directed verdict on the ground that the plaintiff had not established facts sufficient to constitute a cause of action and that there were no issues made under the evidence to require submission to the jury.   This motion was granted and a verdict returned as directed.   Judgment was entered thereon.   The instant appeal is from this judgment.

The plaintiff operates a mill and elevator in the city of Grand Forks. The Industrial Commission is a state agency, charged with the conduct and management of this enterprise.   See chapter 193, North Dakota Session Laws 1933, and acts prior thereto.   The governor, the attorney general, and the commissioner of agriculture and labor of the state of North Dakota, constitute the Industrial Commission.   See chapter 191, Session Laws 1933, and acts prior thereto.   The defendant is a corporation engaged in the business of writing contracts of insurance.   In January, 1938, and in August, 1938, the defendant executed to the

plaintiff certain contracts whereby it insured the plaintiff against losses therein described and arising out of the operation and maintenance of the mechanical equipment and apparatus at the mill and elevator. The first of said contracts covered the period from January 28, 1938 to January 28, 1941, and the second the period from August 23, 1938, to August 23, 1940. The premium required to be paid under these contracts aggregated $9,084.69, which was paid by the plaintiff. On April 26, 1939, the Industrial Commission determined to cancel the aforementioned contracts and to transfer the insurance therein provided to another company. The minutes of the meeting of the Commission held at that time read, in part, as follows:

"Mr. K. A. Fitch, of Fargo, North Dakota, representing the Fidelity & Casualty Company of New York, appeared before the Industrial Commission, requesting the return to the said Fidelity & Casualty Company of the insurance on the machinery, equipment, boilers and turbines at the State Mill and Elevator, it being shown to the Commission that the said insurance was canceled before the date of its expiration during the year 1938.

"Commissioner of Agriculture and Labor . . . moved that . . . the policies of insurance now in force, towit, No. 32830, dated January 28th, 1938, expiring January 28th, 1941 . . . ; and No. 34581, dated August 23d, 1938, expiring August 23, 1940 . . . be and the same are hereby terminated and transferred to the said Fidelity & Casualty Company of New York; this being with the understanding that the termination and transfer of such policies shall not be at a loss to the State Mill and Elevator of the state of North Dakota; and that the Manager of the Mill and Elevator be instructed to deliver to the said K. A. Fitch as representative of the Fidelity & Casualty Company aforesaid, the said insurance policies described herein, to be returned to the Hartford Steam Boiler Inspection & Insurance Company."

The vote in favor of this motion was unanimous and the motion was declared carried. These minutes were signed by the three members of the Commission and attested by James E. Bothne, as secretary thereof. Section 6 of each of the policies provides: "This policy may be canceled by the Assured by mailing written notice to the Company stating when thereafter such cancelation shall be effective. . . ." And § 6517, Comp Laws 1913, by construction a part of the policies, pro-

vides: "The holder of any policy of insurance against loss or damage to property by fire or other casualty hereafter issued by any insurance company doing business in this state may, notwithstanding any provision thereof or contract to the contrary at any time surrender the same for cancelation. . . .

P. M. Murray, of Chicago, is the manager of the western department of the defendant company. The policy contracts above referred to were countersigned with his name by an authorized agent. On May 8, 1939, Mr. Bothne, as the secretary of the Industrial Commission, wrote and sent by registered mail the following letter addressed to the defendant company at its Chicago business address, directed to the attention of Mr. Murray as manager:

"Enclosed you will find your policy No. 32839 covering our State Mill and Elevator Association at Grand Forks, North Dakota. Please cancel by reducing coverage method, effective May 10, 1939, all objects from the enclosed policy except one Centrifugal Pump and at the same time reduce to $1,000.00 the limit per accident.

"Then cancel as of May 10th, 1939, all of the Use and Occupancy coverage.

"Effective May 11, 1939, cancel short rate, the one remaining object to the policy, thereby canceling the contract entirely.

"Please, also, include in your settlement the return premium for the suspension of insurance which is now applied to 1–35 KW Turbine and 1–50 HP Turbine.

"Please prepare a detailed statement of the cancelation and send to us with your check for the return premium, which we understand amounts to $4,730.86.

"We hereby make demand upon you for this amount in full regardless of the penalty endorsement which you have attached to the policy and which we do not consider in effect or binding upon us."

And, on the same day, wrote and sent a letter of the same purport with respect to policy No. 34581. As stated in the letters the policies were returned therewith. They were received and retained by the defendant which made no offer to return them until December 29, 1939, when the plaintiff was advised that they were held subject to plaintiff's direction.

The defendant refused to comply with plaintiff's demand for return

of unearned premiums in the amount demanded but tendered a lesser amount which plaintiff refused to accept. Plaintiff thereupon instituted this action. In its answer defendant specifically denied that the policies had been canceled. While other issues are made by the pleadings this is the only one that need be considered on this appeal.

On the trial the defendant contended, and now contends, that there was no cancelation of the policies in question because no written notice of cancelation signed by the governor and one or more of the other members of the Industrial Commission was served upon the defendant and that cancelation could be effected in no other manner. This contention is predicated on the provisions of § 368a4, as amended by chapter 191, Session Laws 1933, providing: "The Industrial Commission shall adopt and procure an official seal, and may authenticate therewith its documentary acts. All orders, rules, regulations, by-laws and written contracts, adopted or authorized by the Commission shall, before becoming effective, be approved by the Governor, as Chairman, and shall not be in force unless approved and signed by him. In the creation of the Industrial Commission it was the intention of the Legislature, and it is the intention of this Legislature, that the Governor shall have full veto power and that any Act vetoed or not approved and signed by him, shall be null and void and of no effect. . . . And § 7 of chapter 193, Session Laws 1933, providing: "All business of the Association may be conducted under the name of 'North Dakota Mill and Elevator Association.' Title of property pertaining to the operation of the Association shall be obtained and conveyed in the name of 'The State of North Dakota, doing business as the North Dakota Mill and Elevator Association.' Written instruments shall be executed in the name of the State of North Dakota, signed by any two members of the Industrial Commission, of whom the Governor shall be one, or by the Manager of the Association within the scope of his authority so to do as defined by the Industrial Commission."

On the other hand, the plaintiff contends that the policies in question could be and were canceled by virtue of the resolution of the Industrial Commission heretofore quoted, and the notices given through the letters written by the secretary of the Industrial Commission above set out. In that behalf, the plaintiff urges that the resolution of the Commission, of date April 26, evidenced the action of the Commission in deciding

to cancel and terminate the policies; that the secretary of the Commission was its duly appointed agent and notice given by him at the direction of the Commission in the manner above described was sufficient to apprise the defendant of the determination to cancel so as to effect a cancelation.

Plaintiff further contends that even though the notices were insufficient to work a cancelation of the policies, nevertheless there was a cancelation by reason of a surrender to the defendant company of the policies for that purpose pursuant to the provisions of § 6517, Comp Laws 1913, supra; and that, in any event, though the notice as given by the secretary of the Industrial Commission was not in itself sufficient, nevertheless it was considered and treated as sufficient by the defendant which waived any other or further notice.

On the trial of the cause the plaintiff offered as part of its case the letters written by the secretary of the Commission, heretofore set out, and other evidence as to what was said and done between the parties subsequent to the passage of the resolution of April 26. We need not here recite in full this evidence that was thus offered. It is sufficient to say that it tended to show that the defendant company was advised in writing of the action taken by the Commission; that at the direction of the Commission the policies were surrendered to the defendant for cancelation and demand was made for a return of the unearned premium; that the defendant retained the policies thus surrendered in its possession and made no offer to return the same to the plaintiff until December, 1939, many months after it received such policies; that immediately upon the surrender of the policies the plaintiff procured similar insurance in the Fidelity & Casualty Company in the place of the policies thus surrendered; that the defendant knew of this fact; that the managing agent of the defendant conferred with the secretary of the Commission and with the members of the Commission; that he referred to the policies and spoke of them as "canceled;" that he wrote to the plaintiff and inclosed the defendant's check for the unearned premium in the amount that the defendant contended plaintiff was entitled to, reckoned from May 11, the date on which plaintiff claimed a cancelation; that plaintiff refused to accept the same on the ground that it was entitled to a larger return and directed that defendant be so ad-

*vised and that suit would be brought to recover the amount claimed; that the defendant at no time, until long after it was advised that plaintiff refused to accept the tender of the unearned premium as made for the reason that the same was not in the amount claimed by plaintiff as due to it, raised the point that there had been no proper and sufficient cancelation.* This evidence was objected to on the ground that it was irrelevant and immaterial because, under the provisions of chapters 191 and 193, Session Laws 1933, heretofore quoted, and the terms of the policies, there could be no cancelation except by a formal, written notice signed by the governor and one or more of the members of the Commission. The objection was sustained.

We think that in thus ruling the court was in error. Under the terms of the policies the plaintiff might terminate them at any time by mailing written notices of cancelation as provided therein. And plaintiff might also surrender them for cancelation pursuant to the provisions of the statute. All that was required by the terms of the policies was that the plaintiff determine to cancel and terminate them and communicate this fact by written notice mailed to the defendant. Clearly the Commission intended and determined to cancel the policies. This is established by the resolution shown in the minutes of the meeting of April 26. The secretary of the Commission was its duly appointed agent. This was known to the defendant. The mailing of the notices of cancelation was merely a ministerial act. It might have been done by a messenger boy, or anyone else designated by the Commission to do it, and if by the notices so mailed the defendant was apprised of the action of the Commission then, under the terms of the policies, a cancelation was effected. And it is to be noted that no point was ever made by the defendant, prior to the time it was advised that suit would be brought to recover the amount of the claimed return premium, that notice of cancelation or the manner in which the same was given to the defendant were insufficient. Now as to the claim of cancelation pursuant to the provisions of the statute. Taking the proffered evidence at its face value in order to test the validity of the objection made to it, the policies were in the possession of the Commission and when, pursuant to the Commission's direction the secretary delivered them to the defendant with the request that the same be canceled and terminated,

then, under the terms of the statute, a cancelation was effected. See Crown Point Iron Co. v. Ætna Ins. Co. 127 NY 608, 28 NE 653, 14 LRA 147; Gately-Haire Co. v. Niagara F. Ins. Co. 221 NY 162, 116 NE 1015, Ann Cas 1918C, 115, and cases cited in note. Mr. Murray was the managing agent of the defendant company. He knew of the action of the Commission and of the resolution passed by it. So the defendant knew or was charged with knowledge of the action thus formally taken and of the desire and intent of the Commission that the policies be surrendered and canceled and that they were surrendered for cancelation. It received and retained the policies. It knew that the plaintiff had taken out similar insurance in other companies in the belief that the policies had been canceled. The only real difference between the plaintiff and the defendant was as to the amount of the unearned premium.

But, even were there no proper notice of intention to cancel on the part of the Commission given to the defendant so as to meet the requirements of the policies, or no surrender of the policies for cancelation as provided might be done by the statute, nevertheless the evidence offered by the plaintiff and ruled inadmissible for the reasons afore set out, is most compelling to show that the defendant company waived any objection on account of deficiencies in the form or substance of the notice given or on account of any irregularity in the surrender of the policies for cancelation. Certainly the defendant might waive such objection. See Beauchamp v. Retail Merchants Asso. 38 ND 483, 165 NW 545. The defendant considered in the first instance that the policies were canceled and the only matter of dispute between it and the plaintiff was as to the amount of the unearned premiums plaintiff was entitled to receive upon such cancelation. No objection was then taken to the manner in which notice was given or surrender was made and no point that there was no effective cancelation was raised until the controversy between the parties had ripened into this lawsuit. In the meantime, the plaintiff reinsured in the Fidelity & Casualty Company. And the defendant retained in its possession the policies turned back to it and made no offer to return them until after it was advised that the plaintiff was about to bring suit to recover the amount claimed.

The objection should have been overruled and the evidence received.

It follows that the judgment appealed from must be reversed and a new trial ordered.

BURR, Ch. J., and BURKE, MORRIS, and CHRISTIANSON, JJ., concur.